Filed 2/20/26  P. v. Manuel CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DAVID JOHN MANUEL,<br><br>     Defendant and Appellant. | A170342<br><br>(Lake County Super. Ct. No. CR962687)<br><br>**[REDACTED]** |

David John Manuel was originally sentenced to formal probation for committing domestic battery against his former girlfriend, in violation of Penal Code section 273.5, subdivision (a).[1]  After the trial court found that he had violated a term of his probation by contacting the victim, the court revoked his probation and sentenced him to eight years in prison.  Manuel now contends that the trial court violated his Sixth Amendment rights by imposing a sentence based on aggravating circumstances that were neither admitted by him nor tried to a jury.  (See *Cunningham v. California* (2007) 549 U.S. 270, 281 (*Cunningham*); U.S. Const., 6th Amend.)  He also asserts that the trial court conducted an inadequate inquiry when he requested that new counsel be substituted under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) due to his attorney's alleged failure to

---

[1] Undesignated statutory references are to the Penal Code.

1

provide effective representation.  Because his claims have merit, we remand for resentencing and for reconsideration of his *Marsden* motion.

## BACKGROUND

### A.

Manuel's conviction arose from an incident in February 2022 in which he assaulted his then-girlfriend at her residence. At the preliminary hearing, a deputy sheriff testified to out of court statements from the victim and her minor daughter describing what had happened.  According to that testimony, the victim appeared disoriented and had blood running down her face from a head wound.  She reported that she and Manuel had been arguing "due to his level of intoxication," as he had been drinking all day.  Manuel "became irate, threatened to kill a cat that was owned by the victim's daughter, strangled the cat . . . and then threw it out of a window[,] and then continued to assault [the victim]."  Her daughter reported that the couple had argued in the bathroom, where she saw Manuel bite her mother on the head.  When the victim's daughter attempted to intervene, Manuel kicked her away.  The couple continued arguing, eventually moving outside, where Manuel struck the victim; threatened to kill her; put her in a headlock; and slammed her head into the pavement. After momentarily losing consciousness, the victim suffered a concussion and fractured ribs, requiring her to be airlifted to the hospital.

The deputy testified that Manuel appeared to be intoxicated based on his red, watery eyes and slurred speech, the fact that he had "trouble staying on topic" when speaking to the deputy, and the fact that he "continued to fall asleep" in the back of the patrol vehicle.  When the deputy later spoke with him at the jail, Manuel stated that "he didn't recall anything from the incident because of his level of intoxication.  He believed he drank so much that he blacked out."

2

Manuel subsequently pled no contest to domestic battery (§ 273.5, subd. (a)).  At the time he entered his plea, he stipulated that he "struck the victim multiple times, . . . causing a concussion as well [as resulting in her] having been life flighted out to the hospital[;] it was determined that she had multiple fractured ribs."  Manuel also admitted a special allegation that he "inflicted great bodily injury on the victim under circumstances involving domestic violence" for purposes of a sentencing enhancement under section 12022.7, subdivision (e).  In addition, he admitted, as an aggravating circumstance, that the offense occurred in front of the victim's minor children.

Although Manuel faced up to nine years in prison, the trial court initially sentenced him to three years of formal probation with up to one year in county jail at the request of the victim.  The probation conditions included requirements that Manuel complete a batterer's treatment program, abstain from alcohol, perform community service, and participate in rehabilitative services as directed by probation staff.  Another condition required him to comply with a protective order, issued in March 2022, under which he was to have no contact with the victim.

## B.

### 1.

At a probation violation hearing in March 2024, the trial court found that Manuel had violated a term of his probation by failing to comply with the protective order.  A probation officer testified at the hearing that Manuel had reported to her that the victim had driven him to his probation appointment, that she planned to pick him up after the appointment, that the two were in telephone contact, and that he was violating the protective order because "he loved her."

3

**2.**

In April 2024, the trial court held a sentencing hearing. The court took judicial notice of the clerk's file, and Manuel stipulated that the probation reports could be received into evidence.

According to a June 2022 probation report, before the instant offense, Manuel had no prior criminal convictions as an adult.

An April 2024 probation report summarized Manuel's performance on probation as "poor." According to the report, "[h]e refuses to comply with the domestic violence protective order, continues to abuse drugs, and failed to enroll and effectively participate in a batterer's program as ordered by the Court. He has failed to take advantage of the opportunities afforded to him and is not amenable to probation." Between June 2023 and January 2024, Manuel participated in two substance abuse treatment programs. The probation report indicated, however, that he did not formally complete either program: he left the first program after 90 days, believing that he had satisfied his probation requirement; and he was discharged from the second program after about five months because he was "causing issues with other household members, not following rules, and not engaging in treatment."

At the sentencing hearing, after the victim and her daughter provided statements on how Manuel's offense had affected them, Manuel spoke on his own behalf. He apologized and stated, "If I could, I would take it all back. There's no excuse for what I've done or anything that has happened." He explained that he had "been through the system before as a child for . . . four years" and that "I tried to leave . . . that whole system life behind. I wanted to live better, so much so that I would allow people to like abuse me, hit me, you know. And I could take it, I could take a punch[.]" Under questioning by his attorney,

4

Manuel testified that he had not committed any additional acts of violence since the February 2022 offense. Manuel acknowledged that he had an addiction, explaining that his addiction was fueled by a feeling that he was "in a rut" and "[n]o matter how much I try, I can't make it out" of the rut.

Defense counsel argued to the court that Manuel had paid his restitution and completed his community service requirement, emphasizing that Manuel had committed no further acts of violence. Counsel asserted, "[t]his is a young man who is not getting it, but he's not going to get it at nine years in state prison. He's going to get it through a committed drug rehabilitation program. . . . [N]ine years prison for minor -- relatively minor technical violations of his probation I think is extremely heavy. We have a few more tools in our tool chest before we send him away, and I would recommend and request that the Court use those tools before we decide to close the lid on" him. Counsel added, "What we're dealing with [is] a person [who is] not getting it, he's not tackling his addictions. He's not tackling his mental health issues. Granted, he maybe has not signed up for the batterer's treatment program, . . . but, you know, one has to have resources to do that. Those aren't free." Counsel continued, "I think it speaks volumes that he hasn't continued to victimize people. . . . We're seeing a person who's . . . abusing himself through drugs and basically failing to do what he[] . . . said he would do. But, again, nine years is a lot."

After the matter was submitted, defense counsel interjected that Manuel was requesting a *Marsden* hearing. The court explained to Manuel that a "*Marsden* hearing is where the defendant is asking that his attorney be relieved and another attorney be appointed to represent him. Is that what you're requesting?" Manuel responded that he was "not sure." Observing that the court had not heard any request for a

*Marsden* hearing from Manuel, the trial court proceeded with sentencing.

As the court began to explain its findings as to aggravating circumstances, Manuel asked, "Could I go with that *Marsden* hearing?" Noting that it was the second time he had interrupted while the court was pronouncing his sentence, the court stated that it would finish pronouncing the sentence and then hold a *Marsden* hearing. The court explained that after the *Marsden* hearing, if appropriate, the court would vacate the sentence.

The trial court proceeded to sentence Manuel. After providing a detailed factual summary of the offense, the court revoked probation and sentenced Manuel to eight years in prison. With respect to aggravating circumstances, the court found that the offense involved "great violence, great bodily harm, threats of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, or callousness." (See Cal. Rules of Court, rule 4.421(a)(1).) The court found that Manuel had admitted as an aggravating factor that the victim's minor daughter had witnessed the offense. Finding no circumstances in mitigation, the court reasoned that the aggravating circumstances outweighed the mitigating circumstances. The court imposed the upper term of four years for the violation of section 273.5, subdivision (a), with a four-year enhancement (representing the middle term) for great bodily injury involving domestic violence under section 12022.7, subdivision (e).

**3.**

At the *Marsden* hearing, Manuel told the court that **[REDACTED]**. After questioning Manuel further and hearing from his counsel, the trial court disagreed and denied the request for substitute counsel. The court found: "It appears that your issues with [counsel] had to do with his representation of you at the sentencing hearing. He spoke to the victim. He made arguments. After reviewing the report, I would note that prior to

this hearing, he requested documents from the court file to verify that you actually admitted a special allegation in this case. He called you to the stand and had you testify. I saw him during the hearing go to someone else in the audience and ask them if they wanted to testify, and they said they didn't. So he's really done all he can do to represent you in this case. The sentence you received isn't about [your counsel] at all. . . . [I]f you had any other attorney, you would have received the same sentence. So I do find that [counsel] has properly represented you and will continue to do so."

## DISCUSSION

### A.

Manuel contends that he is entitled to resentencing because the trial court violated his Sixth Amendment rights by relying on aggravating circumstances based on facts that had not been admitted or tried to a jury.[2] We agree.

### 1.

In *Cunningham*, *supra,* 549 U.S. 270, the United States Supreme Court held that, except for prior conviction allegations, the Sixth Amendment requires "any fact that exposes a defendant to a greater potential sentence" to be found by a jury beyond a reasonable doubt. (See *Cunningham*, at p. 281.) *Cunningham* concluded that the sentencing scheme in effect in California at the time violated the Sixth Amendment right to a jury trial because it allowed a defendant's prison sentence to be increased beyond the statutory maximum based on facts that had not been found true beyond a reasonable doubt by a jury or admitted by the defendant. (See *Cunningham*, at pp. 274-275;

---

[2] Although Manuel did not preserve this claim in the trial court, his failure to do so does not forfeit his Sixth Amendment right to a jury trial. (See *People v. French* (2008) 43 Cal.4th 36, 47-48.)

see also *People v. Lynch* (2024) 16 Cal.5th 730, 746-747 (*Lynch*).) The statutory maximum, for Sixth Amendment purposes, is the maximum sentence the court may impose without finding any additional facts beyond those necessary to support the verdict. (See *Lynch*, at p. 747.) *Cunningham* explained that California could comply with the Sixth Amendment either by requiring jury findings for any facts necessary to impose an aggravated sentence or, alternatively, by authorizing sentencing courts " 'to exercise broad discretion . . . within a statutory range.' " (See *Cunningham*, at p. 294; *Lynch*, at p. 747.)

California's current sentencing scheme (in effect at the time of Manuel's 2024 sentencing) adopts the first option *Cunningham* outlined. (See *Lynch*, *supra*, 16 Cal.5th at p. 748.) Under section 1170, subdivision (b)[3], when a statute specifies three possible terms, the court must "order imposition of a sentence not to exceed the middle term" unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subds. (b)(1)-(2), as amended by Sen. Bill No. 567 (2021–2022 Reg. Sess.), Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.)

**2.**

At the April 2024 hearing, when pronouncing Manuel's sentence, the trial court first recited the following facts: "[O]n February 26th, 2022, the defendant pushed the victim inside of a bathroom and bit her. The victim's 13-year-old daughter attempted to intervene. The defendant shoved her, kicked her

---

[3] An amended version of section 1170 went into effect on January 1, 2026. (See Sen. Bill No. 551 (2025-2026 Reg. Sess.), Stats. 2025, ch. 225, § 2.) The amendments are not relevant to our analysis.

away, took her cat, said he was going to kill it, then strangled it and threw it out of an elevated window.  The defendant and victim then exited the residence.  Outside, the defendant threatened to kill the victim, elbowed her in the chest, placed her in a headlock, and slammed her head first onto the ground.  The victim briefly lost consciousness.  When she regained consciousness, the defendant was biting her on the face and head.  He then pinned her to the ground and punched her in the face with a closed fist.  The victim suffered substantial injuries, including broken ribs.  The defendant was intoxicated at the time."  After revoking probation, the court stated: "I do find the following aggravating factor.  The crime involved great violence, great bodily harm, threats of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, or callousness.  This aggravating factor was not admitted or otherwise proved to the trier of fact."  (Cal. Rules of Court, rule 4.421(a)(1).)  After concluding that the aggravating circumstances outweighed the mitigating circumstances, the court imposed the upper term for the violation of section 273.5, subdivision (a).

**3.**

Manuel argues persuasively that the trial court improperly relied on facts neither admitted by him nor determined by a jury when it found as an aggravating circumstance that the crime involved great violence, great bodily harm, threats of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, or callousness.[4]  (See Cal. Rules of Court, rule 4.421(a)(1).)

---

[4] Section 1170, subdivision (b)(5), prohibits the trial court from "impos[ing] an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."  Here, because the court imposed an enhancement based on great bodily injury (§ 12022.7, subd. (e)), it could not also rely on great bodily injury as an aggravating

9

Apart from the fact that he struck the victim several times and she suffered fractured ribs, none of the factual details relied on by the trial court in pronouncing the sentence were admitted by Manuel. The trial court expressly stated its finding that the offense involved great violence, great bodily harm, and threats of great bodily harm, and reflected a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)), and it observed that that aggravating factor "was not admitted or otherwise proved to the trier of fact." The trial court's imposition of the unproven aggravating factor violated Manuel's Sixth Amendment right to a jury trial. (See *Lynch*, *supra*, 16 Cal.5th at p. 742.)

As our Supreme Court explained in *Lynch*, we apply the rigorous *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) standard of review to determine whether the trial court's reliance on unproven aggravating circumstances was prejudicial. (*Lynch*, *supra*, 16 Cal.5th at p. 768; see also *People v. Wiley* (2025) 17 Cal.5th 1069, 1087.) Under that standard, the violation is prejudicial unless we can conclude, beyond a reasonable doubt, that a jury would have found true all the aggravating facts upon which the challenged sentence was based. (*Lynch*, at p. 768; see also *id*. at p. 775 [explaining that the defendant is entitled to a

factor for purposes of imposing the upper term. (See *People v. Gutierrez* (1992) 10 Cal.App.4th 1729, 1735 (*Gutierrez*); see also *People v. Castaneda* (1999) 75 Cal.App.4th 611, 614-615.) However, that error is subject to harmless error analysis (see *Gutierrez*, at pp. 1735-1736), and the court could, without running afoul of section 1170, subdivision (b)(5), rely on other aggravating circumstances independent of the great bodily injury enhancement, such as a finding that the offense involved great violence or reflected a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)). (See *Gutierrez*, at pp. 1735-1736.) As a result, we proceed to consider whether the trial court erred by relying on unproven aggravating circumstances.

remand for resentencing unless the appellate court "can conclude that the omission of a jury trial was harmless beyond a reasonable doubt as to *every* aggravating fact the trial court used to justify an upper term sentence"].)  Put another way, Manuel is entitled to a remand unless " ' " '[n]o reasonable jury' " would have found in favor of the defendant' " as to any of the aggravating facts relied upon by the trial court.  (*Lynch,* at p. 775; see also *Wiley*, at p. 1087.)  In conducting this analysis, moreover, we may not assume that the record contains all the evidence that would have been presented had the aggravating circumstances been tried to a jury.  (*Lynch*, at p. 775.)

*Lynch* illustrates the high bar that the People must clear to avoid a remand.  In *Lynch*, the trial court had found, as aggravating factors, that the defendant's actions displayed a high degree of cruelty, viciousness, or callousness; the victim was particularly vulnerable; and the defendant posed a serious danger to society.  (*Lynch*, *supra*, 16 Cal.5th at pp. 744-745.)  The defendant had physically abused the victim daily for several months.  (*Id*. at p. 743.)  The victim was in a romantic relationship with the defendant at the time and was the mother of his child.  (*Ibid*.)  The defendant struck the victim with a small wooden table until a leg broke off and then continued to strike her with the detached leg, an extension cord, and a metal broom, causing the victim to sustain multiple bruises.  (*Id*. at pp. 743-744.)  On one occasion, a witness observed the defendant standing over the victim with his arm drawn back, as if he were getting ready to strike her, while the victim was lying on the floor with her hands raised in defense.  (*Id*. at p. 743.)  Nevertheless, our Supreme Court concluded that it was "not . . . impossible" for the jury to have found in favor of the defendant on one or more of the aggravating factors.  (*Id*. at p. 776.)

*Lynch* requires reversal here.  Although the trial court understandably concluded that Manuel's assault—as described in

11

the probation report—involved great violence, cruelty, and callousness, it is not impossible for a jury to reach a different conclusion, particularly given that in a jury trial, Manuel could seek to introduce mitigating evidence absent from our present record. (See *Lynch*, *supra*, 16 Cal.5th at p. 776.) For example, Manuel maintained that he was blackout drunk at the time of the offense, which was consistent with the victim's report that he had been drinking all day and the police observations that he had a strong odor of alcohol emanating from his person, his speech was heavily slurred, and he fell asleep in the patrol car. A jury might conclude that Manuel acted because he was drunk rather than cruel. As a result, we cannot say that the denial of a jury trial was harmless beyond a reasonable doubt as to *every* aggravating factor relied on by the trial court, and Manuel is entitled to a remand for resentencing. (*See id.*, at p. 776.)

**B.**

Manuel further argues that the trial court abused its discretion in denying his *Marsden* motion. Because we agree that the court's inquiry was inadequate, Manuel is entitled to another *Marsden* hearing on remand.

When a defendant requests that his appointed counsel be relieved and new counsel be appointed under *Marsden*, the trial court must give the defendant an opportunity to explain his concerns about his counsel's performance and provide examples of deficiencies. (*People v. Taylor* (2010) 48 Cal.4th 574, 599 (*Taylor*).) The defendant is entitled to substitute counsel when " 'the record clearly shows that the appointed counsel is not providing adequate representation.' " (*Taylor*, at p. 599.) The trial court abuses its discretion when " 'the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel.' " (*People v. Carter* (2024) 15 Cal.5th 1092, 1099, 1102-1103 (*Carter*).)

12

The trial court also abuses its discretion if it does not conduct an "adequate inquiry into the defendant's motion." (*People v. Ng* (2022) 13 Cal.5th 448, 500 (*Ng*); see also *Carter*, *supra*, 15 Cal.5th at pp. 1102-1103). When the defendant has identified shortcomings by counsel, the court must obtain counsel's response and conduct any further inquiry that is needed to determine whether counsel "had adequate explanations for all of [the] defendant's complaints." (*People v. Abilez* (2007) 41 Cal.4th 472, 488; see also *People v. Ivans* (1992) 2 Cal.App.4th 1654, 1666 [stating the trial court must make a " 'careful inquiry' " before it can intelligently rule on the *Marsden* motion].) The " 'critical factual inquiry' " in a *Marsden* hearing will often involve whether counsel consulted sufficiently with their client, adequately investigated the facts, and properly prepared for the relevant hearing. (*Marsden*, *supra*, 2 Cal.3d at pp. 123-124). When the trial court's inquiry is deficient, we remand the case for a new *Marsden* hearing. (See *Carter*, at pp. 1103-1104.)

When asked about his specific complaints about counsel's performance, Manuel asserted generally **[REDACTED]**. To be sure, he referred to these issues obliquely, but the *Marsden* court itself cautioned us against requiring semantic precision from lay defendants unversed in the law. (*Marsden*, *supra*, 2 Cal.3d at p. 124.) All three issues, notably, are relevant to mitigation of Manuel's sentence. (See **[REDACTED]**.)

What happened next is equally important. When the court asked Manuel's counsel—who had been newly appointed to represent Manuel the previous month–about his preparation, counsel's response raised serious red flags. He candidly admitted that "Mr. Manuel and I had a brief discussion about the circumstances of his case, but honestly we haven't spoken too much." He explained: "I received the probation report. We had a brief discussion on the phone about its contents. We had a brief discussion on the phone about what time he's facing. He

13

expressed he was pretty concerned about that." Counsel added that "I did on his behest reach out to the victim just to gauge her temperature[,] . . . what she was feeling, what she was thinking. She talked about maybe dropping off a letter at my office as well as at the District Attorney's Office, but I didn't . . . see one in my box. And that's fine, obviously. But that was about the extent of my investigation." Counsel offered nothing specific about investigating mitigation factors. The court did not inquire further.

Nor did counsel's performance at the sentencing hearing allay the concerns. At the hearing, counsel did not mention the possibility that **[REDACTED]**. Nor did he cite **[REDACTED]** as mitigation, though he evidently was aware of the problems because he admitted that **[REDACTED]**. Similarly, he did not argue that **[REDACTED]** was a mitigating factor. (See **[REDACTED]**.) Rather, he argued only that *since* the time of the offense at issue, Manuel had not committed any further violent crimes, and he did not object when the trial court found that there were no mitigating factors applicable, a failure that ordinarily forfeits any claim that the trial court abused its discretion in so finding. (See *People v. Wall* (2017) 3 Cal.5th 1048, 1075.)

Finally, counsel's other actions during the sentencing hearing indicate a lack of preparation. The trial court observed that, during the hearing, counsel asked an audience member if they would be willing to testify on Manuel's behalf. This eleventh-hour effort suggests that there may have been more counsel should have done in advance. The trial court did not ask him, however, whether he took any steps before the hearing to procure favorable witnesses, apart from contacting the victim. Additionally, as noted above, counsel did not object when the trial court expressly relied on an aggravating factor that was based on

14

unproven facts—an error that should have been apparent. (See *Cunningham*, *supra*, 549 U.S. at p. 281.)

On this record, the trial court lacked an adequate basis to determine whether counsel had properly investigated and prepared Manuel's mitigation case for the sentencing hearing. (See *Carter*, *supra*, 15 Cal.5th at pp. 1102-1103.) Likewise, we lack an adequate record to review the trial court's denial of *Marsden* relief. (*Carter*, at p. 1103.) On remand, the trial court should conduct a *Marsden* hearing to determine whether Manuel is entitled to substitute counsel for purposes of his resentencing. (See *Carter*, at pp. 1103-1104; *Marsden*, *supra*, 2 Cal.3d at pp. 123-124.) We need not reach the parties' remaining arguments.

## DISPOSITION

The sentence is vacated and the case remanded to the trial court for resentencing in accordance with this opinion. The trial court's order denying Manuel's *Marsden* motion is also vacated. Prior to resentencing, the trial court shall conduct another *Marsden* hearing and reconsider the motion consistent with this opinion.

BURNS, J.

WE CONCUR:

SIMONS, ACTING P. J.
CHOU, J.
*People v. Manuel* (A170342)

15